IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAHAMON ROBERTS,** | : | |
|     **Plaintiff** | : | No. 1:21-cv-00958 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| **J. LUTHER, et al.,** | : | |
|     **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to Defendants' motion to dismiss (Doc. No. 9) pro se Plaintiff Rahamon Roberts ("Plaintiff")'s complaint (Doc. No. 1). Plaintiff has filed neither a response nor a motion seeking an extension of time to respond. Accordingly, because the time period for a response has expired, the motion to dismiss is ripe for disposition.

**I.   BACKGROUND**

Plaintiff, who is currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 on May 27, 2021. (Doc. No. 1.) Plaintiff's complaint concerns events that allegedly occurred while he was incarcerated at SCI Smithfield. Plaintiff names as Defendants Superintendent J. Luther ("Luther"), Restricted Housing Unit ("RHU") Manager N. Goss ("Goss"), Lieutenant Wiser ("Wiser"), Sergeant Rauch ("Rauch"), and Corrections Officers Durst, Fleck, Low, Bickert, Sheets, Webb, and Frock (collectively, "Defendants").[1]  (Id.)

---

[1] Although Plaintiff named Defendant Webb in the caption of his complaint, Webb was not added to the docket as a Defendant in this matter. Moreover, Plaintiff did not name Defendant Sheets in the caption of his complaint, but the body of his complaint indicates that he intends to proceed against him. However, Defendants' brief in support of their motion to dismiss addresses Plaintiff's claims against Defendants Webb and Sheets. The Court, therefore, will direct the Clerk of Court to add Webb and Sheets to the docket as Defendants in this matter. Further,

Plaintiff avers that from March until June 2020, he was housed in the RHU at SCI Smithfield and was "repeatedly exposed to excessive amounts of OC [p]epper [s]pray." (Id. ¶ 11.) Plaintiff alleges that he was not "being unruly [and] non-compliant with RHU staff." (Id. ¶ 13.) Instead, Plaintiff maintains that his exposure to the pepper spray "was the direct and proximate cause of such chemical munitions being excessively, maliciously[,] and sadistically employed by RHU staff," who took no precautions to "prevent such chemical munitions from circulating into the RHU's central air system." (Id.)

Plaintiff asserts that the first incident occurred on March 31, 2020, when Defendants Wiser, Rauch, Webb, Durst, and Low "released massively excessive amounts of OC [p]epper [s]pray in the area directly in front of Plaintiff's cell," causing him to "suffer an intense burning sensation in his eyes, nose, mouth[,] and throat, as well as severe guttural coughing, sneezing[,] and respiratory distress." (Id. ¶ 14.) Plaintiff claims that the same Defendants gave no warning before using the OC spray and failed to take any steps to disengage the RHU's central air unit. (Id. ¶ 15.) Plaintiff avers that when he asked Defendant Rauch to take such action, Defendant Rauch responded by stating: "Shut up N*****, or you're next." (Id. ¶ 16.) The second incident occurred on May 10, 2020, when Defendants Rauch, Webb, Fleck, and Low "released massively excessive amount[s] of OC [p]epper [s]pray into a cell within the proximate vicinity of Plaintiff's cell." (Id. ¶ 17.) Plaintiff alleges that he again experienced the symptoms noted above, as well as vomiting. (Id.) No warnings were given, and no action was taken to disengage the central air system. (Id. ¶ 18.)

Plaintiff further alleges that on June 5, 2020, Defendant Bickert "released a massively

---

Plaintiff initially named Defendant Flock; however, Defendants' filings indicate that the correct spelling of this Defendant's name is Frock. The Court will therefore direct the Clerk of Court to amend the docket to reflect the proper spelling.

2

excessive amount of OC [p]epper [s]pray into a cell within the near vicinity of Plaintiff's cell." (Id. ¶ 19.) Plaintiff required emergency medical attention after experiencing the symptoms noted above. (Id.) Again, no warning was given, and no action was taken to prevent the circulation of the OC spray. (Id. ¶ 20.) The next two (2) incidents occurred three days later, on June 8, 2020, when Defendants Frock and Sheets "release[d] massively excessive amounts of OC [p]epper [s]pray directly into the [RHU's] central air system." (Id. ¶ 21.) Plaintiff required emergency medical attention after these incidents. (Id.) No warning was given, and no action was taken to prevent the circulation of the OC spray. (Id. ¶ 22.) Plaintiff alleges that because of his repeated exposure to OC spray, he "has and continues to suffer from a chronic asthmatic condition, and damage to his nasal, sinus[,] and tracheal passages." (Id. ¶ 25.)

Plaintiff asserts that Defendants Wiser, Rauch, Sheets, Webb, Fleck, Durst, Low, Bickert, and Frock violated his Eighth Amendment rights by using excessive force in the form of OC spray. (Id. ¶¶ 23, 27-28.) He argues further that Defendants Luther and Goss violated his Eighth Amendment rights by failing to take action to curb the excessive use of OC spray despite being placed on notice of such behavior. (Id. ¶¶ 24, 29.) Plaintiff seeks declaratory relief,[2] as well as compensatory and punitive damages. (Id. at 10-11.)

---

[2] Although Plaintiff seeks declaratory relief, he is no longer incarcerated at SCI Smithfield, and his complaint does not allege facts from which the Court could reasonably conclude that he will again be incarcerated at SCI Smithfield under the conditions alleged in his complaint. Thus, Plaintiff's claims for declaratory relief are moot. See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) (noting that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims").

3

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to

4

state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.     Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors."  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### III.   DISCUSSION

#### A.   Plaintiff's Complaint

Defendants assert that the Court should dismiss Plaintiff's complaint because: (1) it violates Rule 20(b) of the Federal Rules of Civil Procedure; (2) Plaintiff's official capacity claims for damages are barred by sovereign immunity; (3) Plaintiff has failed to allege facts showing the requisite personal involvement; (4) Plaintiff has not alleged sufficient facts against each Defendant to maintain an Eighth Amendment excessive force claim; (5) Plaintiff has not alleged sufficient facts against each Defendant to maintain an Eighth Amendment deliberate indifference claim; and (6) Plaintiff's claims regarding secondhand exposure to OC spray are barred by qualified immunity.  (Doc. No. 10 at 6.)  The Court considers each argument below.

##### 1.   Rule 20

Defendants first assert that Plaintiff's complaint should be dismissed "because he has mis-joined multiple Defendants together in a single action in violation of Fed. R. Civ. P. 20(b)."  (Doc. No. 10 at 6.)  Rule 20(b) provides that "[t]he [C]ourt may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no

claim against the party." See Fed. R. Civ. P. 20(b).  While Rule 20(b) does not appear to be implicated by Defendants' arguments, Defendants presumably intend to invoke Rule 20(a)(2), which provides that a plaintiff may join multiple defendants in a single case if: "(1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action."  See Fed. R. Civ. P. 20(a)(2).  "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."  Hagan v. Rogers, 570 F.3d 146, 153 (3d Cir. 2009) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966)); see also Sanders v. Rose, 576 F. App'x 91, 94-95 (3d Cir. 2014) (concluding that an inmate-plaintiff's numerous claims for relief should not have been raised in separate complaints because "[a]ll of the incidents occurred within the course of a few months and all concerned [the inmate-plaintiff's] treatment as a pretrial detainee in one prison").

Defendants maintain that Plaintiff's complaint violates Rule 20 because "he joins separate incidents without including factual content showing a common question of law or fact." (Doc. No. 10 at 8.)  They assert that "the only commonality between the incidents alleged in the complaint is a deficient claim for supervisory liability against Luther and Goss," and that, "[d]rilling down, the allegations of [Plaintiff's] complaint suggest that he is attempting to effectuate a de facto consolidation of what should be five separate lawsuits—with each alleged incident comprising its own suit."  (Id.)  Defendants argue that Plaintiff's complaint "should be dismissed, without prejudice to his ability to re-file separate, self-contained complaints related to each incident of alleged exposure to OC."  (Id. at 9.)

7

Upon review of Plaintiff's complaint, the Court concludes that it does not violate Rule 20. Plaintiff alleges that the individual corrections officers violated his Eighth Amendment rights by using excessive amounts of OC spray in a series of events that occurred over a span of three (3) months, and that Defendants Luther and Goss failed to take action to stop such violations. Plaintiff, therefore, has satisfied Rule 20's requirements, set forth supra. Furthermore, even if the Court were to conclude that the complaint violates Rule 20, "[m]isjoinder of parties is not a ground for dismissing an action." See Fed. R. Civ. P. 21. The Court, therefore, declines to grant Defendants' motion to dismiss on this basis.

### 2.    Official Capacity Claims

Defendants next assert that Plaintiff's damages claims against them in their official capacities are barred by the doctrine of sovereign immunity. (Doc. No. 10 at 9-10.) The Court agrees with Defendants. "A state official sued in his or her official capacity is not a 'person' for purposes of § 1983 when a plaintiff seeks monetary damages, as the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment immunity." Salter v. Wetzel, No. 3:19-cv-1691, 2020 WL 3579554, at *6 (M.D. Pa. June 30, 2020) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 63-71 (1989)). This immunity, however, "is not shared by state officers to the extent that the suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual capacities." See id. (citations omitted). The Court will, therefore, grant Defendants' motion to dismiss with respect to Plaintiff's damages claims against them in their official capacities.

### 3.    Personal Responsibility

Defendants also assert that Plaintiff's complaint "should be dismissed, albeit without prejudice, for his failure to allege facts showing the requisite personal involvement of such

8

Defendants." (Doc. No. 10 at 13.) Defendants claim that "numerous defects are immediately apparent" in the following claims: (1) Plaintiff's claims against Defendants Wiser, Rauch, Webb, Durst, and Low for the incidents that occurred on June 5, 2020, and June 8, 2020; (2) Plaintiff's claims against Defendant Bickert for the incidents that occurred on March 31, 2020, May 10, 2020, and June 8, 2020; (3) Plaintiff's claims against Defendants Sheets and Frock for the incidents that occurred on March 31, 2020, May 10, 2020, and June 5, 2020; and (4) Plaintiff's direct and supervisory liability claims against Defendants Luther and Goss. (Id.)

For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009). As an initial matter, the Court does not agree that Plaintiff has failed to set forth the requisite personal involvement against Defendants Wiser, Rauch, Webb, Durst, Low, Bickert, Sheets, and Frock. Plaintiff's complaint specifically alleges which officers were involved in each use of OC spray. Accordingly, the Court declines to grant the motion to dismiss on this basis.

Plaintiff also asserts that Defendants Luther and Goss were placed on notice of the other Defendants' conduct "through a number of complaints, grievances[,] and/or reports" but failed to "take disciplinary action against them to curb or otherwise control their behavior." (Doc. No. 1 ¶ 24.) Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." See Iqbal, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'"  See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that: "(1) the existing policy or practice created an unreasonable risk of [constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  See Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  At a minimum, supervisory liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate."  See Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

     A liberal reading of Plaintiff's complaint leads the Court to conclude that he has set forth plausible claims against Defendants Luther and Goss.  Plaintiff's complaint suggests that Defendants Luther and Goss were aware of the alleged excessive use of OC spray and took no action to curb it.  Likewise, Plaintiff suggests that these Defendants became aware of the ongoing issue via complaints and grievances.  Several courts have concluded that a supervisory official may be held liable in connection with a review of grievances alleging an ongoing violation because the official "is personally involved in that violation because he is confronted with a  situation he can remedy directly."  See Mayo v. Oppman, No. 17-cv-311, 2018 WL 1833348, at *4 (W.D. Pa. Jan. 23, 2018), report and recommendation adopted by 2018 WL

943528 (W.D. Pa. Feb. 20, 2018); Gibbs v. Univ. Corr. Healthcare, No. 14-cv-7138, 2016 WL 6595916, at *2 (D.N.J. Nov. 7, 2016); Whitehead v. Rozum, No. 11-cv-102, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012).  Accordingly, the Court declines to grant Defendants' motion to dismiss on the basis that he has not alleged the requisite personal involvement.

### 4. Whether Plaintiff Has Stated Plausible Eighth Amendment Claims

#### a. Excessive Force

The standard governing the Court's inquiry as to whether a plaintiff has a viable Eighth Amendment excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  In making this determination, courts are tasked with evaluating the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321).  "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary."  Gibson v. Flemming, 837 F. App'x 860, 862 (3d Cir. 2020) (citing Soto, 744 F.2d at 1270).

Turning to Plaintiff's claims regarding the five (5) uses of OC spray, Defendants assert that Plaintiff's complaint fails "to state a claim for excessive force because, with the exception of the incident which allegedly occurred on March 31, he failed to allege any facts showing that Defendants were even aware they were using force upon him." (Doc. No. 10 at 14.)  The Court

disagrees.  Plaintiff alleges that on two (2) separate occasions on June 8, 2020, Defendants Sheets and Frock sprayed OC spray directly into the RHU's central air system.  (Doc. No. 1 ¶ 21.)  Nowhere in Plaintiff's complaint does he allege that OC spray was used on March 31, 2020, and June 8, 2020 to "subdue recalcitrant prisoners."  See Gibson, 837 F. App'x at 862.  Moreover, while Plaintiff alleges that OC spray was used against other inmates on May 10, 2020 and June 5, 2020, he asserts that officers involved in these incidents used "massively excessive" amounts of OC spray.  As noted supra, "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain."  See Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984).  The Court's liberal reading of the complaint compels the conclusion that Plaintiff has set forth plausible excessive force claims regarding the use of OC spray on March 31, 2020, May 10, 2020, June 5, 2020, and June 8, 2020.  Therefore, the Court declines to grant Defendants' motion to dismiss on this basis.

### b. Deliberate Indifference

Also related to the March 31, 2020, and June 8, 2020 incidents, Plaintiff asserts that his Eighth Amendment rights were violated because the use of OC spray "constituted deliberate indifference to [his] health and safety."  (Doc. No. 1 ¶ 28.)  An Eighth Amendment claim includes both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.  See id.  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  See id.  In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-

official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015), abrogated in part on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020).

Defendants assert that, "[w]ith the exception of the incident which allegedly occurred on March 31 [involving] Defendant Rauch, Plaintiff failed to allege any facts showing that Defendants were aware of [his] conditions of confinement, presence at the location, or need for medical treatment." (Doc. No. 10 at 15.)  The Court, however, disagrees.  "[C]ourts have held that the failure to decontaminate prisoners or otherwise provide medical treatment for prisoners exposed to pepper spray can support a claim for a violation of the Eighth Amendment where the 'failure to treat a prisoner's condition could result in further significant injury' or the 'unnecessary and wanton infliction of pain.'" Bomar v. Wetzel, No. 17-cv-1035, 2020 WL 907641, at *5 (W.D. Pa. Feb. 3, 2020) (quoting Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002)), report and recommendation adopted by 2020 WL 906720 (W.D. Pa. Feb. 25, 2020). Plaintiff avers that the use of OC spray on March 31, 2020, and June 8, 2020, was done maliciously and occurred right outside of his cell (on March 31, 2020) and directly into the central air system (twice on June 8, 2020).  With respect to the use of OC spray on May 10, 2020, and June 5, 2020, Plaintiff avers that it occurred in close proximity to his cell and that he suffered severe effects, such as respiratory distress and vomiting.  Plaintiff also avers that he continues to suffer medical issues from the repeated exposure.  Accordingly, the Court concludes that Plaintiff has set forth plausible deliberate indifference claims regarding the use of OC spray on March 31, 2020, May 10, 2020, June 5, 2020, and June 8, 2020.  The Court, therefore, declines to grant Defendants' motion to dismiss on this basis.

### 5. Qualified Immunity

Finally, Defendants argue that Plaintiff's "complaint seeks damages based upon alleged exposure to secondhand OC spray and thus should be barred by the doctrine of qualified immunity." (Doc. No. 10 at 10.) "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Id. Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)). To make this determination, the Court "look[s] first for applicable Supreme Court precedent." See id. "Even if none exists, it may be possible that a 'robust consensus of

cases of persuasive authority' in the Court of Appeals could clearly establish a right for purposes of qualified immunity." Id. (quoting Taylor v. Barkes, 575 U.S. 822, 826 (2015)).

"[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984); see also Thomas v. Bryant, 614 F.3d 1288, 1311 (11th Cir. 2010) (noting that it is a violation of the Eighth Amendment "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm"); Thomas v. Comstock, 222 F. App'x 439, 442 (5th Cir. 2007) (noting that the use of chemical agents can violate the Eighth Amendment when done so as a "malicious or sadistic application of force"); Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) (citing Soto for the same conclusion); cf. Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000) (noting that "a limited application of [pepper spray] . . . constitutes a 'tempered response by prison officials' when compared to other forms of force"). Accordingly, in light of the above "robust consensus of cases of persuasive authority," see Taylor, 575 U.S. at 826, the Court concludes that inmates have a clearly established right, protected by the Eighth Amendment, to be free from the unnecessary use of chemical agents without penological justification.

In the instant case, as noted supra, Plaintiff's complaint involves five (5) separate incidents involving the use of OC spray. Two (2) of those incidents—the ones that occurred on May 10, 2020, and June 5, 2020—involved the use of "massively excessive" amounts of OC spray on inmates in cells within close proximity to Plaintiff's cell. (Doc. No. 1 ¶¶ 17-20.) On March 31, 2020, officers used "massively excessive" amounts of OC spray in the area directly in front of Plaintiff's cell. (Id. ¶¶ 14-15.) Finally, Plaintiff avers that on two (2) occasions on June 8, 2020, Officers Sheets and Frock sprayed massive amounts of OC spray directly into the

RHU's central air system. (Id. ¶¶ 22-22.) Plaintiff, therefore, has pled facts alleging deliberate misuse of excessive amounts of OC spray to inflict unnecessary pain. Thus, in light of the body of case law set forth above, the Court concludes that Plaintiff had a clearly established right, protected by the Eighth Amendment, to be free from the use of "massively excessive" amounts of OC spray designed to inflict unnecessary pain. Moreover, as discussed supra in Section III.A.4, Plaintiff has adequately pled violations of that clearly established right. The Court, therefore, declines to grant Defendants qualified immunity with respect to Plaintiff's Eighth Amendment claims.[3]

### B.     Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper

---

[3] In support of their motion to dismiss, Defendants cite Stroman v. Wetzel, No. 1:16-cv-2543, 2020 WL 1531325 (M.D. Pa. Mar. 31, 2020). In Stroman, the inmate-plaintiff alleged that on two (2) separate occasions, officers at SCI Huntingdon used OC spray against other inmates on his housing block without announcing such use. See id. at *1-2. Stroman asserted that the OC spray traveled through the air ventilation system, into his cell, and caused him to suffer asthma attacks. See id. Judge Conner granted the defendants summary judgment, concluding, inter alia, that even if the inmate-plaintiff had "stated a colorable claim relating to his exposure to secondhand OC spray, defendants are nevertheless entitled to qualified immunity from this claim for damages." See id. at *5. In so concluding, Judge Conner noted that "Defendants simply could not have recognized that their use of OC spray in response to another inmate's actions across the block would violate a 'clearly established statutory or constitutional right[] of which a reasonable person would have known.'" See id. at *6 (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). In the instant case, however, Plaintiff has alleged facts suggesting that officers did more than just use OC spray against other inmates on his housing block. Rather, Plaintiff alleges that on five (5) several occasions, officers used "massively excessive" amounts of OC spray. He further alleges that the use of OC spray occurred near the vicinity of his cell, and that on two (2) occasions, officers deliberately sprayed OC spray in the RHU's central air system. Given these allegations, the Court does not find Stroman to be persuasive authority leading to a conclusion that Defendants in the above-captioned action are entitled to qualified immunity.

decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing, the Court concludes that it would be futile to grant Plaintiff leave to file an amended complaint with respect to his claims for declaratory relief and his damages claims against Defendants in their official capacities.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Doc. No. 9) will be granted in part and denied in part. The motion will be granted with respect to Plaintiff's claims for declaratory relief and his damages claims against Defendants in their official capacities. The motion will be denied with respect to Plaintiff's claims against Defendants Luther and Goss, as well as his Eighth Amendment claims regarding the use of OC spray on March 31, 2020, May 10, 2020, June 5, 2020, and June 8, 2020. An appropriate Order follows.